IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISSA SANAD BEIRUTI,<br><br>    Plaintiff,<br><br>    vs.<br><br>CORRECTIONS CORPORATION OF AMERICA AND ITS OFFICERS, et al.,<br><br>    Defendants. | Case No. 1:09-cv-01041 LJO JLT (PC)<br><br>] FINDINGS AND RECOMMENDATION GRANTING MOTION FOR SUMMARY JUDGMENT<br><br>(Doc. 23) |

Plaintiff is a federal prisoner proceeding pro se and in forma pauperis with an action pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). The Court screened Plaintiff's complaint pursuant to 28 U.S.C. § 1915A, and found that it stated a cognizable Eighth Amendment claim against Defendant Morris that Morris deprived Plaintiff of nutritionally sufficient food. (Doc. 10)

On May 5, 2011, Morris filed his motion to dismiss or alternative motion for summary judgment. (Doc. 23) Plaintiff filed his opposition to the motion on May 19, 2011 (Doc. 26) and Morris filed his reply on May 26, 2011. (Doc. 29) For the reasons set forth below, the Court recommends that Morris' motion for summary judgment be **GRANTED**.[1]

///

---

[1] Because the Court relies upon the evidence submitted related to this motion, the Court **DISREGARDS** the motion to dismiss.

1

I.   **BACKGROUND**

   A.   **Factual Background**

Plaintiff alleges that while he was housed at California City by Corrections Corporation of America (CCA), the prison underwent a lockdown from February 24, 2009 through April 7, 2009. (Doc. 1 at 4) Plaintiff was a participant in the kosher meal plan and, as a result of the lookdown, he received "brown meal bags" for each meal. Id. Plaintiff does not contend that he was not provided kosher meals. Id. Instead, he claims that brown meal bags did not contain sufficient kosher food to provide him adequate nutrition and caloric intake. Id.

Plaintiff alleges that during the lookdown, for breakfast, he was served one fresh fruit, one cup of dry cereal, two slices of bread, one cup of vitamin enriched low fat milk, three pats of margarine, one coffee packet, two jelly packets and three sugar packets. (Doc. 1 at 4) For lunch and dinner on average per week, Plaintiff was provided one serving of tuna, two boiled eggs twice per week, two servings of peanut butter and jelly, three slices of cheese twice per week, seven servings of baked beans, two cups of vegetables seven times per week, one cereal bar. Id. In addition, for each lunch and dinner meal, Plaintiff was provided four slices of bread and four pats of margarine, two packets of salad dressing[2], two packets of fortified fruit drink mix and either a piece of fruit or half a cup of canned fruit. Id. Plaintiff alleges that due to the scant food provided during this lookdown period, he lost 15 pounds. (Doc. 1 at 4) He claims that the meals failed to provide sufficient calories, vitamins and minerals but seems most concerned that he was served an inadequate amount of protein–including kosher bologna. Id.

In his affidavit, Defendant Morris attests that he works for Canteen Correctional Services ("Cateen"), which is the private company that provides inmate food service at CCA. (Doc. 25 at 1-2) He has worked for Canteen since September 2003 as the Food Service Director. Id. Morris clarifies that he is not a dietician nor a religious coordinator and has no involvement or input into developing inmates' menus. Id. at 2. Instead, his main duties are to ensure cost-effective food service is provided in a

---

[2] Notably, in an attachment to the complaint, Plaintiff reported that his lunch and dinner meals contained "lettuce" which would explain why he was given salad dressing. (Doc. 1 at 7) He states in his opposition that his meals consisted of "mostly lettuce or raw cabbage." (Doc. 29 at 3) Thus, it appears that Plaintiff inadvertently omitted this meal item in his description of the lunch and dinner menus.

2

manner that complies with CCA's security policies and is consistent with safety and sanitation requirements. Id. Though he supervises the staff that prepares and distributes the meals, he is not personally involved in either task. Id. For obvious reasons, CCA "maintains strict control and supervision over Canteen's operations." Id. In particular, CCA establishes the specifications for all inmate diets, including which foods may be served, the portion size and what foods may be served as substitutions for others based upon medical or religious reasons. Id. at 3. Moreover, CCA preapproves all menus. Id. In addition, CCA's Chaplain reviews and approves inmate requests for a religious-based diet. Id.

Morris asserts that, generally, the kosher meal diet was reviewed by a dietician and a Rabbi who certified that it "complied with pertinent nutritional guidelines and Kosher diet standards." (Doc. 25 at 5) Morris attaches a copy of the dietician's certification that the 2-week cycle of kosher menus, provided "approximately 3,000 calories" per day and that they "provide a nutritionally adequate diet for . . . [the] incarcerated adult population." (Doc. 25 at 4-5; Doc. 25-1 at 24)

Morris attests that during a lookdown, inmate menus must be modified to exclude hot menu items. (Doc. 25 at 4-5.) This is due to the fact that during a lockdown, inmates are served their meals in their cells and it is not possible to maintain the proper temperature of the hot foods while in transport to the cells. Id. In this event, Morris reports that the hot protein items are substituted with other foods. Id. at 5, 9.

During the lookdown at issue, Morris asserts that the hot protein menu item was substituted with boiled eggs, beans and peanut butter. (Doc. 25 at 9) However, no other substitution of items from the pre-approved kosher menu, occurred. Id. Morris reports that during the lookdown, the prepared and assembled kosher "sack" meals were "spot-checked by Canteen staff, the CCA Chaplain and/or CCA Religious Programs office personnel and transported and distributed" to the inmates. Id. Morris reports that he did not learn of any claimed inadequacy of Plaintiff's meals until weeks after the lookdown ended. Id. at 9-10. He asserts that had learned of it during the lookdown, according to policy, any meals that failed to have all preapproved items would have been replaced immediately. Id. He reports further that when an inmate first arrives at CCA, he is advised of this policy and informed to bring the meal deficiency to the attention of CCA staff on duty. Id.

3

In his opposition, Plaintiff points out that Morris has failed to demonstrate that the substituted foods were nutritionally equivalent to those otherwise approved. (Doc. 29 at 2) Moreover, he argues that Morris fails to demonstrate that with these substitutions, the meals Plaintiff received during the lookdown met the standards for nutritional adequacy and caloric content outlined by the dietician when she certified the preapproved menus. Id.

## II.   LEGAL STANDARDS

### A.   Summary Judgment

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute regarding a material fact is genuine if the evidence is such that a reasonable trier of fact could return a verdict in favor of the nonmoving party. Id.

A party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). Where the movant will have the burden of proof on an issue at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). "On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." Id. (citing Celotex, 477 U.S. at 323).

If the movant has sustained its burden, the nonmoving party must "show a genuine issue of material fact by presenting *affirmative evidence* from which a jury could find in [its] favor." FTC v. Stefanchik, 559 F.3d 924, 929 (9th Cir. 2009) (citing Anderson, 477 U.S. at 257 (1986)) (emphasis in the original). Although the nonmoving party need not establish a material issue of fact conclusively in its favor, it may not simply rely on "bald assertions or a mere scintilla of evidence in [its] favor" to

4

withstand summary judgment. Stefanchik, 559 F.3d at 929. Indeed, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citation omitted).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." Soremekun, 509 F.3d at 984. Rather, "the evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." Anderson, 477 U.S. at 255. See T.W. Electric Service, Inc. v. Pacific Electric Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987). Inferences, however, are not drawn out of the air; it is the nonmoving party's obligation to produce a factual predicate from which the inference may justifiably be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985).

### III. DISCUSSION

The Eighth Amendment prohibits an inmate, such as Plaintiff, to be subjected to cruel and unusual punishment. In Keenan v. Hall, 83 F.3d 1083, 1091 (9th Cir. 1996), the Court determined that "Adequate food is a basic human need protected by the Eighth Amendment." Though food provided to inmates does not have to taste good or look appealing, it must provide adequate nutrition such to maintain the inmate's health. Id.

To demonstrate liability under Bivens[3,4] for a violation of the Eighth Amendment, Plaintiff must demonstrate that Morris personally participated in the deprivation of his rights. Iqbal, 129 S.Ct. at 1949. Liability cannot be founded on mere respondent superior liability. Instead, Iqbal, 129 S.Ct. at 1949 held,

> [Respondent] argues that, under a theory of "supervisory liability," petitioners can be liable for "knowledge and acquiescence in their subordinates' use of discriminatory criteria to make classification decisions among detainees." Iqbal Brief 45-46. That is to say, respondent believes a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution. We reject this argument. Respondent's conception of "supervisory liability" is inconsistent with his accurate stipulation that petitioners may not be held accountable for the misdeeds of their agents. In a § 1983 suit or a Bivens action—where masters do not answer for the torts of their servants—the term "supervisory liability" is a misnomer. Absent vicarious liability,

---

[3] "Actions under § 1983 and those under Bivens are identical save for the replacement of a state actor under § 1983 by a federal actor under Bivens." Van Strum v. Lawn, 940 F.2d 406, 409 (9th Cir.1991).

[4] Morris presumes for purposes of this motion only that he may be held liable as a federal actor though, clearly, he disagrees with such a finding. (Doc. 23 at 15)

each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.

Notably here, Plaintiff has not alleged or identified any specific action taken by Defendant Morris. (Doc. 1 at 2, 4) At most, his complaint cites a memo written by Morris in which he reported to CCA's Chaplain Ayers that during the lookdown, inmates were provided eggs, beans and peanut butter in lieu of the hot, soy protein products. Id. at 21. This fact is not in dispute given that Plaintiff and Morris admit that this occurred. (Doc. 1; Doc. 25 at 9) However, this fact alone does not establish liability.

Of keen importance, in opposition to Morris' motion, Plaintiff rightly takes issue with the quality of Morris' evidence related to the nutritional adequacy of the substituted "sack" meals. (Doc. 26) In doing so, he does not question Morris' evidence that Morris did not develop inmate menus, did not certify them, did not approve them, did not prepare any meals and did not play any role in deciding which substitute menu items would replace hot menu items (Doc. 25 at 2-10; Doc. 25-1 at 28) . (Doc. 26) Indeed, Plaintiff *relies* upon this evidence to demonstrate that Morris' claim, that Plaintiff received nutritionally adequate meals, lacks foundation. Id. Given the state of the evidence, the Court must conclude that Morris did not pay any role in the constitutional deprivation of which Plaintiff complains. Therefore, the Court recommends that Morris' motion for summary judgment be **GRANTED**.[5]

## V. FINDINGS AND RECOMMENDATIONS

For the reasons set forth above, it is **HEREBY RECOMMENDED** that:

1.     Morris' motion for summary judgment be **GRANTED**.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within 21 days after being served with these Findings and Recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

///

---

[5] Because this issue is determinative, the Court does not consider the myriad of other arguments advanced by Morris.

The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **December 29, 2011**               /s/ Jennifer L. Thurston
                                                                     UNITED STATES MAGISTRATE JUDGE